IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

CARMA L. DESANTIS,                        6:13-cv-01408-MA

         Plaintiff,                  OPINION AND ORDER

    v.

COMMISSIONER SOCIAL SECURITY
ADMINISTRATION,

         Defendant.

ROBYN M. REBERS
P.O. Box 3530
Wilsonville, Oregon 97070

    Attorney for Plaintiff

S. AMANDA MARSHALL
United States Attorney
ADRIAN L. BROWN
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, Oregon 97204-2902

JOHN C. LAMONT
Social Security Administration
Office of the General Counsel
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, Washington 98104-7075

    Attorneys for Defendant

1 - OPINION AND ORDER

MARSH, Judge

Plaintiff, Carma L. Desantis, brings this action for judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying her application for supplemental security income (SSI) disability benefits under Title XVI of the Act. See 42 U.S.C. §§ 401-434, 1381-1383f. This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). For the reasons set forth below, I affirm the final decision of the Commissioner.

## PROCEDURAL BACKGROUND

Plaintiff protectively filed the instant application for SSI on December 8, 2009, alleging disability due to fibromyalgia, irritable bowel syndrome (IBS), bronchitis, acid reflux, and "sleep problems." Tr. 167. Plaintiff's claim was denied initially and upon reconsideration. An Administrative Law Judge (ALJ) presided over a hearing on February 22, 2012, at which Plaintiff testified and was represented by counsel. Tr. 25-57. On February 29, 2012, the ALJ issued a decision denying Plaintiff's claim. The Appeals Council declined review and Plaintiff timely appealed to this Court.

## FACTUAL BACKGROUND

Born on October 20, 1965, Plaintiff was 36 years old on the alleged onset date of disability and 46 years old on the date of the hearing. Tr. 163. Plaintiff has a 10th grade education and no

past relevant work. Tr. 19, 168. Plaintiff alleges her conditions became disabling on May 1, 2002. Tr. 163.

In addition to her hearing testimony, Plaintiff submitted an Adult Function Report. Tr. 186-93. Plaintiff's husband, Samuel Robert Desantis, submitted a Third Party Function Report. Tr. 177-84. On March 13, 2010, Patrick Radecki, M.D., conducted a physical examination and submitted an opinion as to Plaintiff's physical impairments. Tr. 237-42. On July 17, 2010, Robert A. Kruger, Psy.D., conducted a psychological evaluation and submitted an opinion as to Plaintiff's mental impairments. Tr. 269-73. On April 2, 2010, J. Scott Pritchard, D.O., reviewed Plaintiff's medical records and submitted an opinion as to Plaintiff's physical residual functional capacity. Tr. 62-63. On August 9, 2010, Neal E. Berner, M.D., reviewed Plaintiff's records and submitted an opinion as to Plaintiff's physical limitations. Tr. 75-76. Finally, on August 3, 2010, Dorothy Anderson, Ph.D., reviewed the medical record and submitted an opinion as to Plaintiff's mental limitations. Tr. 73-74.

## THE ALJ'S DISABILITY ANALYSIS

The Commissioner has established a five-step sequential process for determining whether a person is disabled. Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987); 20 C.F.R. § 416.920(a)(4)(i)-(v). Each step is potentially dispositive. The claimant bears the burden of proof at Steps One through Four. Tackett v. Apfel, 180

3 - OPINION AND ORDER

F.3d 1094, 1098 (9th Cir. 1999). The burden shifts to the Commissioner at Step Five to show that a significant number of jobs exist in the national economy that the claimant can perform. See Yuckert, 482 U.S. at 141-42; Tackett, 180 F.3d at 1098.

At Step One, the ALJ determined Plaintiff has not engaged in substantial gainful activity since the application date, December 8, 2009. See 20 C.F.R. §§ 416.920(b), 416.971 et seq.; Tr. 13.

At Step Two, the ALJ determined Plaintiff's chronic bronchitis is a severe impairment. See 20 C.F.R. § 416.920(c); Tr. 13-15.

At Step Three, the ALJ determined Plaintiff does not have an impairment or combination of impairments that meet or medically equal any listed impairment. See 20 C.F.R. §§ 416.920(d), 416.925, 416.926; Tr. 15.

The ALJ found Plaintiff has the residual functional capacity (RFC) to perform a full range of work at all exertional levels, but that Plaintiff should avoid exposure to dust, odors, and gases due to her chronic bronchitis. Tr. 16-19.

At Step Four, the ALJ found Plaintiff has no past relevant work. See 20 C.F.R. § 416.965; Tr. 19.

At Step Five, however, the ALJ found that jobs exist in significant numbers in the national economy that Plaintiff can perform, including Mail Clerk, Office Helper, and Information Clerk. See 20 C.F.R. §§ 416.969, 416.969(a); Tr. 19-20.

Accordingly, the ALJ found Plaintiff is not disabled within the meaning of the Act.

## ISSUES ON REVIEW

Plaintiff raises two assignments of error on appeal. First, Plaintiff argues the ALJ improperly rejected her testimony. Second, Plaintiff asserts the ALJ's RFC was not supported by substantial record evidence.

## STANDARD OF REVIEW

The court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). If the evidence is susceptible to more than one rational interpretation, the Commissioner's decision must be upheld. Andrews, 53 F.3d at 1039-40. If the evidence supports the Commissioner's conclusion, the Commissioner must be affirmed; "the court may not substitute its judgment for that of the Commissioner." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001).

5 -- OPINION AND ORDER

## DISCUSSION

### I. Plaintiff's Credibility

Plaintiff first argues the ALJ improperly rejected Claimant's testimony. In deciding whether to accept subjective symptom testimony, an ALJ must perform two stages of analysis. 20 C.F.R. § 404.1529. First, the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. Smolen v. Chater, 80 F.3d 1273, 1281-82 (9th Cir. 1996). Second, absent a finding of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear, and convincing reasons for doing so. Id. at 1281. The ALJ's reasons for rejecting a claimant's testimony must be supported by substantial evidence in the record. See Carmickle v. Comm'r Soc. Sec. Admin., 533 F.3d 1155, 1161 (9th Cir. 2008).

If an ALJ finds the claimant's testimony regarding her subjective symptoms unreliable, the "ALJ must make a credibility determination citing the reasons why the testimony is unpersuasive." Morgan v. Comm'r Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999). In doing so, the ALJ must identify which testimony is credible and which testimony undermines the claimant's complaints, and make "findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit [the] claimant's testimony." Thomas v. Barnhart, 278 F.3d 947, 958 (9th

6 – OPINION AND ORDER

Cir. 2002). The ALJ may rely upon ordinary techniques of credibility evaluation in weighing the claimant's credibility. Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008).

At the hearing, Plaintiff testified she can only sit for approximately twenty minutes and can lift a gallon of milk, but will usually be in pain afterward. Tr. 34. Plaintiff reported that she can stand or walk for between fifteen and twenty minutes at a time, but that she lays down on the couch for approximately half of the day. Tr. 44-45. Plaintiff testified that her IBS causes her to experience alternating diarrhea and constipation, and that she spends considerable time each morning in the restroom. Tr. 40, 46. Plaintiff testified that she has developed memory problems that have led her to stop driving, but that she did not have any other mental health problems. Tr. 41. Plaintiff later testified, however, that she also experiences panic attacks that cause her to lose consciousness. Tr. 46-47. As to her fibromyalgia symptoms, Plaintiff reported she experiences pain throughout her body. Tr. 42. Plaintiff reported that swelling in her feet and ankles forces her to elevate and ice her feet multiple times per day. Tr. 43-44.

As to her daily activities, Plaintiff reported that she can shower and do laundry, but that her husband does the cooking and she only goes to the store to ride along with her husband and get out of the house. Tr. 34-35. Plaintiff reported that she has not

7 - OPINION AND ORDER

worked much in her life because she stayed home raising her children and by the time they grew up her medical conditions had deteriorated to the point that her attempts to work were unsuccessful. Tr. 39.

In her Adult Function Report, Plaintiff reported that her daily activities consist of waking up, taking medicine and using the restroom, and attempting to control her pain with a heating pad, ice packs, and medicine. Tr. 186. Plaintiff reported that most days are "extremely bad" and that she cannot do much. Tr. 186. Plaintiff noted that her pain causes her difficulty sleeping through the night. Tr. 187. In addition, Plaintiff noted that eating "causes massive pain." Tr. 187. As to housework, Plaintiff reported that she does laundry and cleans the bedroom, but that she can no longer perform yard work. Tr. 188. Plaintiff noted that her conditions cause her to stay home much of the time. Tr. 190.

Plaintiff checked that her conditions affect her abilities to lift, squat, bend, stand, reach, walk, sit, kneel, climb stairs, see, remember, complete tasks, concentrate, and understand. Tr. 191. Plaintiff reported that she can walk one-quarter of a mile before needing to rest "until [her] legs stop burning." Tr. 191. As to her abilities to pay attention and understand instructions, Plaintiff noted that she becomes disoriented when her pain is bad, and that stress triggers greater pain. Tr. 191-92.

The ALJ rejected Plaintiff's testimony because Plaintiff demonstrated a "tendency to overstate her complaints," gave poor effort in her psychological evaluation with Dr. Kruger, has a poor work history, and Plaintiff's alleged activities of daily living are inconsistent with her report of caring for her late-mother. Tr. 17-18. I conclude these reasons, taken together, constitute clear and convincing reasons to reject Plaintiff's testimony.

The ALJ's primary reason for rejecting Plaintiff's testimony was Plaintiff's exaggeration of her complaints to treating and examining medical sources. Tr. 17. Indeed, Dr. Radecki, the physician who examined Plaintiff, found that, in his opinion, Plaintiff had "too much tenderness" for testing to be valid. Tr. 240. Accordingly, Dr. Radecki assigned no functional limitations other than environmental limitations on account of Plaintiff's bronchitis. Tr. 241-42. Similarly, Dr. Kruger, the psychological evaluating source, found that Plaintiff's "performance on the [Test of Memory Malingering] revealed scores that are considerably below expectation, raising concerns as to whether she was putting forth her best effort in responding to this examiner's questions and tasks during today's interview." Tr. 272.

Moreover, as the ALJ noted, Plaintiff's very significant complaints were not supported by proportional objective findings. See Tr. 233, 267, 313. Finally, Plaintiff presented to the emergency room in October of 2011 asking to be tested for "'all

9 - OPINION AND ORDER

forms of cancer,' leukemia, lymphoma, lupus, rheumatoid arthritis, and thyroid disorder," but the attending physician found Plaintiff "medically stable" and that such extensive testing was neither possible nor appropriate. Tr. 287. When informed that she would not receive the testing she requested, Plaintiff threatened the attending physician, began "yelling very loudly," and necessitated the intervention of security. Tr. 287-89. Accordingly, the ALJ's rejection of Plaintiff's testimony because Plaintiff exaggerated her complaints is a compelling reason to reject Plaintiff's testimony and is supported by considerable record evidence.

The ALJ's next reason for rejecting Plaintiff's testimony – poor effort in her examination with Dr. Kruger – is related to the ALJ's first reason, but is nonetheless also a proper reason to reject Plaintiff's testimony. See Tonapetyan v. Halter, 242 F.3d 1144, 1147-48 (9th Cir. 2001) (finding that a plaintiff's "lack of cooperation during consultative examinations" was a proper reason to reject the plaintiff's testimony). As noted, Dr. Kruger expressed "concerns as to whether [Plaintiff] was putting forth her best effort" in exam. Tr. 272.

The ALJ also found Plaintiff's testimony as to her activities of daily living inconsistent with her report to Dr. Kruger that she was caring for her ailing mother. Tr. 269. Indeed, at the February 22, 2011, hearing Plaintiff reported that she does not care for her cats. Tr. 36. The ALJ could reasonably find this

report inconsistent with Plaintiff's report on July 17, 2010, that Plaintiff was taking care of her mother who was in "poor health" and had just "'broken her shoulder.'" Tr. 269.

In sum, I conclude the above reasons readily amount to clear and convincing reasons, supported by substantial record evidence, to reject Plaintiff's subjective testimony. The ALJ properly weighed Plaintiff's testimony.

## II. Sufficiency of the RFC

Plaintiff next argues the RFC is insufficient because the ALJ failed to include limitations based on Plaintiff's fibromyalgia, IBS, and adjustment disorder.[1] As noted, the RFC is sufficient if it is supported by substantial evidence in the record. Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005). When the ALJ properly rejects a Plaintiff's testimony, the RFC must account for

---

[1] Plaintiff's argument in this respect is difficult to characterize. At times it appears Plaintiff argues the ALJ failed to list fibromyalgia, IBS, and adjustment disorder as a severe or medically determinable impairment at Step Two, but Plaintiff specifically disavowed this argument in her Reply Memorandum. Pl.'s Reply at 2. At other times it appears Plaintiff argues the ALJ erroneously weighed medical testimony, but Plaintiff does not directly raise this argument or cite the applicable legal standards. Accordingly, I do not consider such arguments because Plaintiff failed to specifically and distinctly raise them in her opening brief. See Carmickle, 533 F.3d at 1161 n.2; Boyer v. Comm'r Soc. Sec. Admin., No. 3:12-cv-00392-SI, 2013 WL 3333060, at *10 (D. Or. July 1, 2013). Therefore, I interpret Plaintiff's assignment of error as a more generalized argument that the RFC was not based on a reasonable interpretation of the record evidence and therefore is not supported by substantial evidence because the RFC does not include limitations based on Plaintiff's fibromyalgia, IBS, and adjustment disorder.

11 - OPINION AND ORDER

"those limitations for which there was record support that did not depend on [the claimant's] subjective complaints." Id.

As to Plaintiff's physical conditions, the ALJ considered the evidence concerning Plaintiff's fibromyalgia and IBS in the RFC portion of the opinion, but ultimately gave "significant weight" to Dr. Radecki's opinion that Plaintiff had no limitations in standing, walking, sitting, lifting, or carrying. Tr. 18. In light of the ALJ's rejection of Plaintiff's testimony, this determination was supported by substantial evidence. With respect to Plaintiff's fibromyalgia and IBS, there are no objective findings in the record that establish the diagnoses of these conditions or their resulting limitations.

Plaintiff's IBS first appears in the medical record in June of 2008 as part of her self-reported medical history. Tr. 220. Objective gastrointestinal examinations at that time were largely unremarkable and Plaintiff did not seek any more IBS treatment for two years. Tr. 223. Plaintiff presented with gastrointestinal complaints again in 2010, but after objective exams were again largely unremarkable, the default diagnosis of IBS based on Plaintiff's self-reported history persisted. Tr. 229, 232-34. Dr. Radecki found that Plaintiff's IBS was "well-controlled," and did not assign any functional limitations on that basis. Tr. 241. Thus, the ALJ's refusal to incorporate any functional limitations based on IBS was supported by substantial evidence in light of the

subjective nature of the diagnosis, the ALJ's rejection of Plaintiff's testimony, and Dr. Radecki's findings.

As to fibromyalgia, the ALJ relied on Dr. Radecki's finding that while Plaintiff demonstrated tenderness over a sufficient number of fibromyalgia trigger points, the test results were invalid on account of Plaintiff endorsing tenderness "practically everywhere." Tr. 241. Accordingly, neither Dr. Radecki nor the ALJ assigned any functional limitations to Plaintiff's fibromyalgia. The medical record contains little evidence of fibromyalgia more reliable than that which Dr. Radecki rejected. While Douglas D. Eliason, D.O., found on January 15, 2010, that Plaintiff had "multiple tender trigger points," he noted in May of that year that Plaintiff "kind of self-diagnosed . . . fibromyalgia." Tr. 247, 249. Fibromyalgia is not a primary concern throughout the remainder of the medical record and, even where fibromyalgia is discussed, it is often discussed as a default diagnosis for otherwise unexplained subjective symptoms. Tr. 309, 314-15, 317, 319-21, 324. The ALJ's exclusion of fibromyalgia-based limitations from the RFC was supported by substantial evidence.

Finally, as to Plaintiff's adjustment disorder, the only medical evidence in the record concerning mental health issues was Dr. Kruger's evaluation. Tr. 269-73. The ALJ discussed Dr. Kruger's findings, including that Dr. Kruger voiced concerns about

13 - OPINION AND ORDER

whether Plaintiff had given best effort on exam. Tr. 273. Dr. Kruger accordingly warned that "the reader is to be cautious in interpreting her performance." Tr. 272. Otherwise, Dr. Kruger noted that Plaintiff's "overall attention ability and capability of sustaining her attention on brief, basic, routine, repetitive tasks that are commensurate with her abilities were seen as fair," memory was grossly intact, intelligence fell within the low-average range, albeit with reports of signs and symptoms of a "mild depressive" disposition. Tr. 273.

Considering Dr. Kruger's concerns about Plaintiff's performance and the absence of any other mental health records, I find the ALJ's refusal to include functional limitations based on Plaintiff's mental health concerns was supported by substantial evidence. Notably, Plaintiff testified that her only mental health problems were poor memory and panic attacks. Tr. 41, 47. Plaintiff does not appear to have reported the panic attacks to Dr. Kruger, however, and Dr. Kruger expressly found that Plaintiff's memory was "grossly intact." Tr. 272. Accordingly, the ALJ did not err by refusing to include any mental health limitations in the RFC. Finally, even if the ALJ should have included Dr. Kruger's arguable limitation of Plaintiff to "brief, basic, routine, repetitive tasks," such error would be harmless because the VE testified that the jobs cited by the ALJ would also be available to somebody additionally limited to simple, routine work. Tr. 52-53,

14 - OPINION AND ORDER

273; See Stout v. Comm'r Soc. Sec. Admin., 454 F.3d 1050, 1055 (9th Cir. 2006) (ALJ error is harmless if it is "inconsequential to the ultimate nondisability determination."). The ALJ's RFC assessment was supported by substantial evidence.

### CONCLUSION

For the foregoing reasons, the decision of the ALJ is AFFIRMED.

IT IS SO ORDERED.

DATED this __5__ day of September, 2014.

*Malcolm F. Marsh*
Malcolm F. Marsh
United States District Judge

15 - OPINION AND ORDER